Judd B. Grossman, Esq.
jgrossman@grossmanllp.com
Lindsay E. Hogan, Esq.
lhogan@grossmanllp.com
**GROSSMAN LLP**
745 Fifth Avenue – 5th Floor
New York, New York  10151
Telephone:  (646) 770-7445

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MADISON GLOBAL PARTNERS, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　-against-<br><br>ELECTROCORE, LLC, and<br>CORE VENTURES II LLC,<br><br>　　　　　　　　　　Defendants. | Case No:<br><br><br>**COMPLAINT** |

Plaintiff Madison Global Partners, LLC ("Madison"), by and through its undersigned attorneys, for its Complaint against Defendants ElectroCore, LLC ("ElectroCore") and Core Ventures II, LLC ("CV II") (collectively, the "Companies"), states as follows, on knowledge as to itself and on information and belief as to all other matters, which are likely to have evidentiary support after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.　　Madison brings this breach-of-contract action against the Companies to recover outstanding fees for services rendered under a December 8, 2015, letter agreement (the "Original Agreement," attached as Exhibit A), as amended by the October 17, 2016, letter (the "Piper Amendment," attached as Exhibit B), and the November 22, 2016, letter (the "TPG Amendment," attached as Exhibit C) (collectively, the "Fee Agreement").

1

2. The Companies hired Madison under the Original Agreement as their "non-exclusive financial advisor." (Ex. A at 1.) In that role, Madison provided advisory and investment-banking services for the Companies, including introducing and identifying institutional and individual investors (the "Covered Parties") that participated in ElectroCore's Series A financing, Bridge financing, and Series B financing. And in consideration for those services, the Companies were obligated to pay Madison various "Transaction Fees," including cash and securities.

3. Madison satisfied all its obligations under the Fee Agreement and there is no dispute that the Covered Parties participated in the financing rounds, but despite Madison's repeated requests for payment, the Companies have refused to pay to Madison its fees, including cash and securities (warrants and warrants for common units from both ElectroCore and CV II).

4. Although the Companies recently admitted in writing that they owe 831,534 warrants and 261,412 warrants for common units (though, to be sure, the Companies have not yet issued these securities), the Companies owe Madison additional securities, including warrants for common shares in ElectroCore and CV II, as well as no less than $575,000 in cash.

5. Madison has filed this action to recover what is due.

**PARTIES, JURISDICTION, AND VENUE**

6. Plaintiff Madison Global Partners, LLC is a New York limited-liability company with its principal place of business at 350 Motor Parkway, Hauppauge, New York, 11788.

7. Defendant ElectroCore, LLC is a Delaware limited-liability company with its principle place of business at 150 Allen Road, #201, Basking Ridge, New Jersey 07920. The members of ElectroCore are non-New York domiciliaries.

8.    Defendant Core Ventures II, LLC is a Delaware limited-liability company with its principle place of business at 150 Allen Road, #201, Basking Ridge, New Jersey 07920. The members of CV II are non-New York domiciliaries.

9.    CV II is an investment group that ElectroCore formed to raise capital to invest in ElectroCore. CV II and ElectroCore share the same address and phone number. ElectroCore's co-founder is an executive officer and managing director of CV II.

10.   This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.   This Court has personal jurisdiction over Defendants because they have transacted business within the State, including acts related to the Fee Agreement at issue, and the Fee Agreement provides for exclusive New York jurisdiction.

12.   Venue in this District is proper under 28 U.S.C § 1391 because the Fee Agreement contains a New York, New York choice-of-venue provision.

## STATEMENT OF FACTS

**The Companies Hire Madison.**

13.   The Companies hired Madison under the Original Agreement as their "non-exclusive financial advisor" to provide advisory and investment-banking services, including introducing and identifying Covered Parties who participated in ElectroCore's Series A financing, Bridge financing, and Series B financing. (Ex. A at 1.)

14.   In consideration for Madison's services, the Companies promised to pay Madison various "Transaction Fees," including cash and securities, based on the total investments.

3

15. Under the Original Agreement, for each direct investment into the Companies, Madison was entitled to: (1) a "Transaction Fee" totaling 8% of all amounts directly invested into the Companies; and (2) warrants "to purchase such number of the same Securities issued in such Transactions as shall equal eight percent (8%) of the number of such Securities with an exercise price equal to the price paid by investor(s) for the Securities." (Ex. A at 5-6.)

16. Under the Fee Agreement, the Companies agreed to indemnify Madison, including payment of attorney's fees and expenses, for all claims "arising out of any matter referred to in this Agreement." (*Id.* at 12.)

**ElectroCore Hires Piper Jaffray and Promises to Buy Out Madison**
**Regarding Its Fee Obligations In Connection With the Series B Round.**

17. ElectroCore hired Piper Jaffray under a September 20, 2016, letter agreement (the "Piper Agreement," attached as Exhibit D), as its "exclusive advisor with respect to any private placement of [ElectroCore] securities, including the Company's proposed Series B financing (a 'Placement')." (Ex. D at ¶ 1.)

18. In consideration of Madison's "prior and future activities," ElectroCore agreed to pay Madison, in addition to fees already paid, "a cash fee equal to 25% of all fees due to Piper Jaffray . . . in connection with any Placement." (Ex. B at ¶ 3.)

19. Under the Piper Agreement, ElectroCore agreed to pay "a selling commission of seven percent (7.0%) of the gross proceeds received by [ElectroCore] during the term of this Agreement or the Tail Period," defined as the 12-month period following termination, "on all sales of the Securities." (Ex. D at ¶ 2.) Provided that certain conditions were met, "the aggregate selling commission . . . will not be less than $1,250,000." (*Id.* at ¶¶ 1-2.)

20. In the event Piper Jaffray "decline[d] to participate in the Placement," then ElectroCore is required to pay twenty-five percent (25%) of all fees due to any "Substitute

4

Placement Agent," meaning "any other third party acting as placement agent, broker, underwriter, or financial advisor or similar capacity to the Company, in connection with any Placement."  (Ex. D at ¶ 3.)

21. ElectroCore has confirmed that Piper Jaffray "declined to participate in the [Series B] placement."

22. According to ElectroCore's December 5, 2017, SEC Form D filing, the fees paid to other placement agents totaled $2.3 million.  Accordingly, Madison is owed no less than $575,000 (*i.e.*, 25% of $2.3 million) in connection with cash fees paid to Substitute Placement Agents.

23. In addition to cash, the Substitute Placement Agents also received placement-agent warrants.  Accordingly, Madison is entitled, under the Piper Amendment, to a cash fee equal to 25% of the value of those warrants.

**Madison Introduces The Paulson Group to**
**ElectroCore to Assist the Companies with the Bridge Financing.**

24. Shortly after hiring Piper Jaffray, ElectroCore retained The Paulson Group ("TPG"), "a firm first introduced to [ElectroCore] by [Madison]," to assist with ElectroCore's Bridge financing.  (Ex. C at 1.)

25. In consideration of Madison's role in making this important introduction, ElectroCore agreed "to provide [Madison] with additional compensation"—*i.e.*, fees in addition to the "compensation from [ElectroCore] equal to 25% of the fees paid by [ElectroCore] pursuant to the Piper Engagement Letter"—"for amounts received by [ElectroCore] from The Paulson Group."  (*Id.*)

26. ElectroCore agreed to pay these fees in cash and securities:  (1) "a cash fee equal to three percent (3%) of the principal amount of all Notes purchased by [TPG] or investors first

5

introduced to [ElectroCore] by TPG (the 'TPG Investors') in connection with [ElectroCore]'s current bridge financing," and (2) warrants to purchase membership interests in ElectroCore "equal to two percent (2%) of the total membership interests into which the Notes purchased by the TPG Investors in the Bridge Financing are convertible." (Ex. C at ¶ 1.)

27. ElectroCore also continued to use Madison's advisory services in connection with its Series B financing, entitling Madison to "its Transaction Fee (*i.e.*, 8% cash . . . and 8% warrants) on any amounts invested into" ElectroCore by the Covered Parties. (Ex. A at 5.)

28. During this time, Madison also continued in its role as a non-exclusive financial advisor to CV II.

29. And for those services, as provided under the Original Agreement, CV II was obligated to pay Madison, separate and apart from the fees owed by ElectroCore, "its Transaction Fee (*i.e.*, 8% cash . . . and 8% warrants) on any amounts invested into CV II in connection" with Series A financing, the Bridge financing and the Series B financing, as well as warrants "to purchase such number of the same Securities issued in such Transactions as shall equal eight percent (8%) of the number of such Securities with an exercise price equal to the price paid by investor(s) for the Securities." (*Id.* at 5-6; *see* Ex. B at ¶ 5.)

**The Companies Fail to Pay Madison All Outstanding Fees.**

30. The Companies have not paid all fees owing to Madison.[1]

31. First, ElectroCore owes cash under the Piper Amendment in connection with the Series B financing.

---

[1] The Companies have admitted that (i) CV II owes (a) 89,412 warrants for Series A units and 64,957 warrants for common units; and (b) 177,792 warrants for Bridge financing notes and 124,455 warrants for common units; and (ii) ElectroCore owes (a) 307,187 warrants for Bridge financing notes; and (b) 257,143 warrants for Series B units and 72,000 warrants for common units. To date they have not issued any of these securities to Madison.

32. Second, ElectroCore owes (i) securities under the TPG Amendment in connection with the Bridge financing, including 341,302 warrants to purchase common units; and (ii) securities under the Original Agreement in connection with the Series B financing, including 257,143 warrants to purchase Series B units and 72,000 warrants to purchase common units, the "same Securities issued in such Transactions," (Ex. A at 6), including all the same rights associated with those securities.

33. Third, CV II owes securities in connection with the Series A financing, the Bridge financing, and the Series B financing, including (i) 89,412 warrants to purchase Series A units and 64,957 common units; and (ii) 200,722 warrants to purchase Series B units, 252,909 common units and 36,129 warrants for warrants, the "same Securities issued in such Transactions," (Ex. A at 6), including all the same rights associated with those securities as provided to investors.

### A. ElectroCore Has Failed to Pay Madison The Cash Fee Owed under the Piper Amendment.

34. ElectroCore has not paid any portion of the cash fee owed under the Piper Amendment.

35. The Companies have confirmed that Piper Jaffray "decline[d] to participate in the Placement," which under the Piper Amendment means that Piper did "Withdraw." (*See* Ex. D at ¶ 1.) And under these circumstances, ElectroCore is required to pay twenty-five percent (25%) of all fees due to any "Substitute Placement Agent," meaning "any other third party acting as placement agent, broker, underwriter, or financial advisor or similar capacity to the Company, in connection with any Placement." (*See* Ex. B at ¶ 3.)

36. According to ElectroCore's December 5, 2017, SEC Form D filing, those cash fees paid to Substitute Placement Agents totaled $2.3 million. Accordingly, Madison's "cash fee" should be no less than $575,000 (*i.e.*, 25% of $2.3 million).

37. In addition to cash, as part of the fee to Substitute Placement Agents, ElectroCore issued warrants. Therefore, under the Piper Amendment Madison is also entitled to a cash fee equal to 25% of the value of those placement-agent warrants.

38. ElectroCore has not paid any portion of the "cash fee" owed to Madison under the Piper Amendment.

### B. ElectroCore Admits It Owes Securities.

39. ElectroCore is required to issue securities to Madison under the TPG Amendment and the Original Agreement.

40. TPG Investors purchased Notes totaling approximately $11 million. Under the Fee Agreement, ElectroCore therefore is required to issue warrants to "purchase a number of membership interests in [ElectroCore] equal to two percent (2%) of the total membership interests into which the Notes purchased by the TPG Investors in the Bridge Financing are convertible." (Ex. C at ¶ 1.)

41. Madison also introduced investments totaling $2.25 million in connection with ElectroCore's Series B financing. Under the Fee Agreement, ElectroCore therefore is required to issue certain securities to Madison, including warrants to purchase "the same Securities issued in such Transaction[]," (Ex. A at 6), including all the same rights associated with those securities as provided to investors.

42.     ElectroCore owes Madison (i) 341,302 warrants to purchase common units; (ii) 257,143 warrants to purchase Series B units; and (iii) 72,000 warrants to purchase common units, including all the same rights associated with those securities as provided to investors.[2]

43.     Although ElectroCore has admitted that it owes Madison a substantial portion of these securities, to date it has not issued any of those securities.

### C.     CV II Has Failed to Issue Securities to Madison in Connection With The Series A Financing, the Bridge Financing or the Series B Financing.

44.     Madison is entitled under the Original Agreement to be paid a fee, comprised of cash and "the same Securities issued in such Transactions," (Ex. A at 6), including all the same rights associated with those securities as provided to investors, "for amounts invested directly into CV II" by "investors or entities introduced or identified to CV II . . . by or on behalf of [Madison]" in connection with the Series A financing, the Bridge financing and Series B financing (Ex. B at ¶ 5).

45.     Madison is responsible for direct investments into CV II totaling almost $5 million, including convertible notes, warrants, and common shares.  Additionally, to incentivize investors, in addition to the purchased securities, the Companies issued units to investors in the Series A financing and Bridge financing for no added consideration (the "Bonus Common Units").

46.     Accordingly CV II owes (i) 89,412 warrants to purchase Series A units and 64,957 Bonus Common Units; and (ii) 200,722 warrants to purchase Series B units, 252,909 Bonus Common Units and 36,129 warrants for warrants, including all the same rights associated with those securities as provided to investors.

---

[2] The 72,000 warrants to purchase common units represent 8% of the common warrants issued to the Series B investors as part of the Series B financing (50% warrant coverage @ $1.25 per unit).

47. Although CV II has admitted that it owes Madison a substantial portion of these securities, to date it has not issued any of these securities.

48. Madison brings this action to recover the cash and securities that it is owed by the Companies that they have refused to pay in breach of their obligations under the Fee Agreement.

## FIRST CAUSE OF ACTION
### Breach of Contract
(Against Defendants)

49. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

50. Madison, ElectroCore, and CV II are all parties to the Fee Agreement.

51. The Fee Agreement provides that ElectroCore and CV II must pay certain fees and securities to Madison.

52. Madison performed all of its obligations under the Fee Agreement.

53. The Companies admit that there are outstanding securities due under the Fee Agreement. And they have refused to pay the outstanding cash fee. The Companies have therefore breached the Fee Agreement.

54. Under the Fee Agreement, ElectroCore owes Madison (i) a cash fee equaling not less than $575,000 and 25% percent of the value of any placement-agent warrants issued to Substitute Placement Agents; (ii) 341,302 warrants to purchase common units; (iii) 257,143 warrants to purchase Series B units; and (iv) 72,000 warrants to purchase common units, including all the same rights associated with those securities as provided to investors.

55. Under the Fee Agreement, CV II owes Madison (i) 89,412 warrants to purchase Series A units and 64,957 Bonus Common Units; and (ii) 200,722 warrants to purchase Series B

units, 252,909 Bonus Common Units and 36,129 warrants for warrants, including all the same rights associated with those securities as provided to investors.

56. The Companies are obligated under the Fee Agreement to pay Madison's attorney's fees and costs and expenses relating to this dispute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Madison Global Partners, LLC respectfully requests that the Court enter a judgment: (1) awarding compensatory damages; (2) requiring ElectroCore and CV II to issue outstanding securities, including warrants and common units; (3) awarding attorney's fees and costs; and (4) granting any other and further relief as the Court may deem just and proper.

Dated: May 2, 2018

GROSSMAN LLP

By: _____
Judd B. Grossman, Esq.
jgrossman@grossmanllp.com
Lindsay E. Hogan, Esq.
lhogan@grossmanllp.com
745 Fifth Avenue – 5th Floor
New York, New York 10151
Telephone: (646) 770-7445
Facsimile: (646) 417-7997

*Attorneys for Plaintiff*
*Madison Global Partners, LLC*